# IN THE COURT OF APPEALS OF IOWA

No. 22-1218
Filed October 5, 2022

**IN THE INTEREST OF A.R., A.S., and J.S.,**
**Minor Children,**

**N.S., Mother,**
    Appellant,

**J.S., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Carroll County, Joseph B. McCarville, District Associate Judge.

A mother and father each appeal the juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Mary M. Lauver of Lauver Law, Lake City, for appellant mother.

Mark J. Rasmussen, Jefferson, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Kaitlyn Cassandra Dimaria of Dimaria Law P.L.L.C., West Des Moines, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother and father each appeal the order terminating their parental rights. We find an extension of time should not be granted in this case, termination of the parents' rights is in the children's best interests, no exceptions to termination should be applied, and the parents did not preserve their claims regarding reasonable efforts. We affirm the termination of the parental rights of the mother and father.

### I.     Background Facts & Proceedings

N.S. is the mother of A.R., born in 2010; A.S., born in 2014; and J.S., born in 2020. The father of A.S. and J.S. is not the biological father of A.R.[1] The family was previously involved with the Iowa Department of Health and Human Services (DHHS) beginning in 2018 after an incident of domestic violence and drug use by the parents. The children were adjudicated to be in need of assistance (CINA). The mother had a period of negative drug tests, and the father was imprisoned on federal charges.[2] That case was closed on August 5, 2020

Only a few days after the prior case closed, the mother tested positive for methamphetamine. The father was still in federal prison. The children were removed from the parents' custody on December 14 and placed with the paternal grandmother of A.S. and J.S. There was a CINA adjudication for the children,

---

[1] G.R. is the father of A.R. The State did not seek to terminate his parental rights, and he is not a party to this appeal. Because the biological father of A.S. and J.S. has the same initials as one of the children, we refer to him in this appeal as "the father."

[2] The father was incarcerated on February 25, 2020.

pursuant to Iowa Code section 232.2(6)(c)(2) (2020). The children were placed in foster care in March 2021.

The mother moved to California from April 9 until May 2, and then again from June 20 to July 27. The mother had sporadic telephone calls with the children while she was in California. She was also inconsistent in attending visitation while she was in Iowa. For the visits she attended, she often left early. The father did not have visits while he was in prison, but he talked to the children on the phone and wrote them letters.

There continued to be concerns about the mother's use of methamphetamine. She often did not show up for drug tests. When she did show up, she frequently tested positive for methamphetamine. At a meeting at the mother's home in March 2021, a Family Centered Services worker saw green leafy speckles on an envelope. The mother admitted she "smoked dope, weed, and drank alcohol" the day before the worker's visit.

The mother returned to California again on October 10. She was charged with a probation violation for leaving the state without informing her probation officer.[3] She did not have any telephone contact with the children after October.

On January 10, 2022, the State filed a petition seeking termination of the parental rights of the mother and father. The mother attended a substance-abuse treatment center in California. She relapsed and used methamphetamine after she left the program. She re-entered the program but did not successfully

---

[3] The mother testified her probation was concerning an operating while intoxicated charge. Although the court took judicial notice of the pending probation revocation file, such is not contained in our record. At the time of the termination hearing, the mother also had charges pending in another county and in another state.

complete it. When the mother returned to Iowa in April, she was placed in jail for probation violations.

The termination hearing was held on two days in May and July 2022. The mother was still in jail on the hearing dates. She testified that she had never successfully completed a substance-abuse treatment program. The mother was facing a charge of assault in Iowa and charges of burglary, credit card fraud, and stolen tools in Nevada. By the second day of the hearing, the mother had started mental-health counseling. She testified she would be released later in July and intended to enter a substance-abuse treatment program. The mother asked for additional time to go to treatment after she was released from jail and stated she believed the children could be returned to her custody within six months.

The father testified that he had been convicted of conspiracy to distribute methamphetamine and unlawful possession of a firearm. His anticipated release date is in 2028, but he stated he could potentially be released in 2026. The father testified he took a parenting class while in prison. The father also asked for the mother to be given six more months to work on reunification.

The district court issued a decision on July 8, terminating the mother's parental rights to the three children under section 232.116(1)(e), (f) (A.R. and A.S.), and (h) (J.S.). The father's parental rights to A.S. were terminated under section 232.116(1)(e) and his rights to J.S. were terminated under section 232.116(1)(e) and (h).[4] On the issue of best interests, the court stated:

---

[4] The district court's order did not refer to section 232.116(1)(f) in regard to the father, which would have applied to A.S., as she was born in 2014 and was more than four years old.

The Court finds that it would be in the best interests of the children to terminate the parent-child relationship. The children's safety is best ensured by termination so the children can be raised in stable home with caring, nurturing parents. In order to further the long-term nurturing and growth of the children, the best placement is with [DHS] so that [A.S. and J.S.] can be freed for adoption and [A.R.] can possibly be placed with his father in California. The physical, mental, and emotional condition and needs of the children can be best met by termination for all the reasons stated above.

The mother and father each appeal the termination of their parental rights.

## II.  Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III.  Extension of Time

**A.**    The mother claims the court should have granted her an extension of time to work on reunification with the children. At the termination hearing she testified that she expected to be released from jail soon. While incarcerated, the mother began mental-health treatment. She testified that she intended to enter a substance-abuse treatment program after she got out of jail. The mother asserts the children could be returned to her custody within six months.

A six-month extension of time may be granted under sections 232.104(2)(b) and 232.117(5) if parental rights are not terminated following a termination hearing. *In re D.P.*, No. 21-0884, 2021 WL 3891722, at *2 (Iowa Ct. App. Sept. 1, 2021).

An extension of time may be granted if the court "determin[es] that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005) (quoting Iowa Code § 232.104(2)(b)). "The judge considering [the extension] should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *Id.* (citation omitted).

The mother has been involved with services since 2018. She was unable to consistently maintain sobriety. The mother testified she had never successfully completed a substance-abuse treatment program. In addition, although the mother expected to be released from jail shortly after the termination hearing, she was still facing criminal charges. "Children should not be forced to wait for their parent to be able to care for them, particularly when we have so little evidence to rely upon to believe the circumstances will be different in six months." *In re M.M.*, No. 15-0214, 2015 WL 1332330, at *2 (Iowa Ct. App. Mar. 25, 2015). We conclude the district court properly denied the mother's request for additional time to work on reunification.

**B.** The father also claims he should be given six more months to work on reunification. There is no evidence to show the father's situation will be different in six months. Even if he is potentially released from prison in 2026, that is several years from now. The record does not demonstrate that the need for "removal of the child from the child's home will no longer exist at the end of the additional six-month period." *A.A.G.*, 708 N.W.2d at 92 (quoting Iowa Code § 232.104(2)(b)).

### IV.    Best Interests

**A.**    The mother contends that termination of her parental rights is not in the children's best interests.[5]  In considering the best interests of children, we give "primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional needs of the child[ren] under section 232.116(2)."  *P.L.*, 778 N.W.2d at 40.  "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *Id.* at 41.

The mother has not maintained consistent contact with the children.  She went to California from April 9 until May 2, from June 20 to July 27, and then left again on October 1, 2021, not returning until April 2022.  She had limited contact with the children while she was out of state.  When she returned to Iowa, she was jailed for probation violations.  In addition, the mother has not been able to maintain long-term sobriety.  The children need consistency, which the mother is not able to provide.  We find termination of the mother's parental rights is in the children's best interests.

**B.**    The father also claims termination of his parental rights is not in the children's best interests.  The earlier CINA action began because of domestic violence between the parents.  The father engaged in conduct that caused him to

---

[5] Neither parent disputes the statutory grounds for termination of their parental rights.  As such, we do not address the grounds relied on by the juvenile court for termination of the parents' parental rights.  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

be sentenced to ten years in prison on drug-related charges. He is presently unable to contribute to the long-term nurturing and growth of the children and we find it is in the children's best interests to terminate his parental rights to A.S. and J.S.

**V.      Exceptions**

**A.**      The mother contends that the court should have applied an exception to termination of her parental rights. *See* Iowa Code § 232.116(3). She states the court could have decided not to terminate her parental rights because "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c). The exceptions to termination found in section 232.116(3) are permissive, not mandatory. *In re W.T.*, 967 N.W.2d 315, 324 (Iowa 2021). "The court may exercise its discretion in deciding whether to apply the factors in section 232.116(3) to save the parent-child relationship based on the unique circumstances of each case and the best interests of the children." *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019).

The mother claims that she has a close bond with the children. She states, "The children looked forward to visits and enjoyed them." The mother's argument ignores the fact that the visits with the children were very inconsistent. The mother did not have face-to-face contact with the children during the periods of time she was in California. Furthermore, she did not even have telephone contact during much of her time in California beginning in October 2021. The juvenile court found there was almost no bond between the children and the mother and we agree. We

conclude an exception to termination based on the closeness of the parent-child relationship should not be applied in this case.

**B.**     The father contends the court should have applied the exception to termination found in section 232.116(3)(c) to prevent termination of his parental rights.  We note the father has been in prison for all of J.S.'s life.  While A.S. knows her father, he has been in prison for a good portion of her young life.  As with the mother, the court found there was almost no bond between the children and the father, and we agree with this finding as well.  We determine the permissive exception for termination of parental rights found in section 232.116(3)(c) should not be applied under these circumstances.

## VI.     Reasonable Efforts

**A.**     The mother claims the State did not engage in reasonable efforts to reunite her with the child.  She asserts that DHS did not work with her while she was in California or make an effort to place the children with her there. "Reasonable efforts are services to 'preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home.'"  *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019) (quoting Iowa Code § 232.102(10)(a)). Although DHS must make reasonable efforts toward reunification, "parents have a responsibility to object when they claim the nature or extent of services is inadequate."  *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017).  An objection to services must be made before the termination hearing, or it has been waived.  *Id.* at 840.

The mother did not raise these claims during the CINA proceedings and we determine they have been waived. *See id.* If we were to address the issue, however, we note that the mother was not in contact with DHS during much of the time she was in California.[6] Also, she did not request having the children placed with her there. She told DHS workers she intended to return to Iowa. We conclude the efforts made by DHS were reasonable under the facts of the case. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000) (noting DHS must provide services "that are reasonable under the circumstances").

**B.** The father claims DHS failed to provide reasonable efforts to reunite him with the children because DHS did not work with him while he was incarcerated. First, the record does not show the father previously raised this issue, so it is waived. *See L.M.*, 904 N.W.2d at 840. Second, the father does not specify what services should have been provided to him. *See In re L.M.*, No. 12-0516, 2012 WL 2411041, at *1 (Iowa Ct. App. June 27, 2012) ("While the State has an obligation to make reasonable efforts toward reunification, a parent has an equal obligation to demand other, different, or additional services before a permanency or termination hearing, and if the parent does not do so, the issue is not preserved for appellate review."). We conclude the father has not preserved his claims regarding reasonable efforts.

---

[6] We note that both the mother and father allege they preserved the issue of reasonable efforts at the permanency and termination hearing. A separate permanency hearing, although originally scheduled, appears to have been continued to the time of the termination hearing. And as noted, any objection to reasonable efforts or services must be raised prior to the termination hearing. At the dispositional review hearing, which appears to be the last hearing prior to the combined termination and permanency hearing, the juvenile court order stated that no party had requested additional services or assistance.

We determine the district court properly terminated the parental rights of the mother and father.

**AFFIRMED ON BOTH APPEALS.**